CASE 39—PETITION ORDINARY—APRIL 8.

# Mutual Life Insurance Company of New York v. Thomson, &c.

APPEAL FROM FAYETTE COURT OF COMMON PLEAS.

1. LIFE INSURANCE—DEATH OF APPLICANT BEFORE DELIVERY OF POLICY.—Where a policy of life insurance was placed by an agent of the company in the hands of a broker through whom the application had been received, to be by him delivered to the insured, the contract must be regarded as completed, and binding on the parties, although the applicant died before the policy was delivered to him, the agent having received and appropriated to use of the company the premium which was paid by the insured to the broker; and in this action on the policy the court properly instructed the jury that the policy had been delivered.

2. SAME—MISREPRESENTATIONS AS TO LIQUOR HABIT.—Upon an appli-

cation for life insurance an inquiry as to whether the applicant is then temperate in his habits of drinking intoxicating liquors is material; and where a false statement of the applicant as to that matter is relied upon to avoid the policy, it is no answer upon his part to say that his habits were not such as to injure his health. But an inquiry in regard to previous habits of drinking intoxicating liquors is not material unless they existed to such an extent as to affect the health or physical condition of the applicant, and thereby render him an unsatisfactory subject for life insurance; and the court in this case properly so instructed the jury.

3. EVIDENCE SUFFICIENT TO SUPPORT VERDICT.—There being evidence conducing to support a verdict for plaintiffs, the court will not set it aside upon a mere preponderance of evidence in favor of the defendant.

4. REFUSAL TO ALLOW WITNESS TO TESTIFY AFTER CLOSE OF TESTIMONY.—As defendant, after discovering the absence of a witness who was present and sworn at beginning of trial, did not exercise proper diligence to coerce his attendance, the court did not abuse its discretion in refusing to permit the witness to testify upon his appearance in court for that purpose, after plaintiffs had closed their evidence, that of defendant having been previously given.

BRECKINRIDGE & SHELBY FOR APPELLANT.

1. Upon the issue made as to whether or not there had been any delivery of the policy and completion of the contract of insurance, the burden of proof was upon the plaintiffs, and it was error to assume in favor of the plaintiffs all the facts in issue upon this branch of the case, and then instructing them peremptorily as to the effect of those facts.

2. The testimony establishes the falsity of Rodes Thomson's statement, that at the time of his application he was not addicted to the habitual use of liquor, that his use of same was temperate, that his former habits in this respect were temperate, that he was, to the best of his knowledge and belief, in sound physical condition, and that he had not been attended by a physician for any thing serious within ten years prior to his application.

3. Defendant's motion for judgment *non obstante veredicto* should have been sustained. It stands confessed upon the pleadings that the false representation of the applicant in regard to his habits as to liquor was material to the risk, and was fraudulent. But even if not, the admitted fact that it was made and was false is sufficient of itself to avoid the insurance. The statement is to be taken as matter of law as a material one, wholly irrespective of the question whether the habit had in point of fact affected the applicant's health. (Civil Code, sec. 386; Gen. Stats., chap. 22, sec. 22; May on Insurance, secs. 195-6; *Idem*, sec. 299.)

4. Where a material witness absents himself after the jury has been sworn, the party for whom he is summoned is entitled to a continuance. (Costigan v. Commonwealth, 11 Ky. Law Rep., 617.)

5. In his application, Thomson stated that he was, to the best of his knowledge and belief, in sound physical condition, and a satisfactory subject for life insurance. In its instruction given upon the issue made as to this statement, the court, instead of t lling the jury to find for defendant if Thomson was not, *to the best of his knowledge and belief*, in sound physical condition, &c., made the finding for the defendant upon this issue dependent upon the *actual fact* of Thomson's not being in sound physical condition, &c. This was error.

6. If the statement of Thomson that he had not been attended by a physician for any thing serious for ten years prior thereto, was a material one, and was untrue, the defendant was entitled to rely upon the falsity of it without reference to the question whether the applicant knew it to be untrue. It was error in instructing the jury to make the defendant's right to a finding upon this issue, dependent upon the fact that Thompson had *to his knowledge* been treated for such complaint. (Germania Ins. Co. v. Rudwig, 80 Ky., 231.)

G. C. LOCKHART OF COUNSEL ON SAME SIDE.

WM. LINDSAY FOR APPELLEES.

1. The acceptance of the application and the payment of the premium consummated the contract, and it was not material to the rights of the parties whether the policy was or not technically delivered to the insured before his death. If held by Cochran, the agent who had received the premium, he held it for the insured as matter of law.

2. The deposit in Sayre's Bank was the payment of the premium, and the court would have been in error to have failed to assume the fact of payment at the date of deposit.

3. The evidence was sufficient to authorize the finding of the jury that the representations of the insured as to his habits of intemperance were not false.

4. There was no necessity for replying to the amended answer; all its material averments being specifically denied by the original reply.

5. It was no abuse of discretion to refuse to permit the witness Haynes to testify when offered, as his testimony would have been merely cumulative.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Margaret Thomson, widow, and Rodes, C. H. and C. E. Thomson, infant children of Rodes Thomson, now deceased, brought this action to recover of the

Mutual Life Insurance Company of New York ten thousand dollars, which, by a policy on the life of the deceased, issued November 15, 1887, the defendant promised to pay the plaintiffs. And this is an appeal from a judgment for the amount sued for.

The two main grounds of defense to the action now urged by counsel are : First, that the policy had never been, in fact, delivered prior to death of the insured, and the contemplated insurance did not therefore take effect. Second. That the contract of insurance, even if completed, was rendered void by various false statements made by the deceased in his written application for the policy.

It appears that November 12, 1887, he applied to one Cochran, an insurance broker in the city of Lexington, for the purpose of procuring a policy of insurance from some company, and the amount of it, and of the first premiums, having been agreed upon, they went together to the office of Dr. Todd, who had been previously appointed by defendant as one of its medical examiners, by whom an examination of Rodes Thomson was then made, and a written application, embodying answers or statements by the physician as well as by Thomson, made out and signed by them. The application thus prepared was, on the same day, delivered by the physician to Buckley, authorized agent of defendant at Lexington, who had furnished the blank form, and by him sent to the principal office of the company in the city of New York And November 15th, or in due course of mail thereafter, the policy in question was received by Buckley, and by him placed in the hands of Cochran, to

be by him delivered to Rodes Thomson, amount of the premium having, in meantime, been put in bank to the credit of Cochran. It was, however, not delivered to Rodes Thomson, who died November 28th, but to his wife, subsequent to that event.

It seems to us the contract of insurance must, under such circumstances, be regarded as completed and binding on the parties before death of the assured, and that it was both the right and duty of Cochran to deliver the policy, as was done. For not only was it placed in his hands by Buckley for that purpose, but the latter received and appropriated to use of the company amount of the premiums that had been placed to credit of Cochran. The lower court did not, therefore, err in assuming and instructing the jury that the policy had been delivered.

The statements or answers to questions in the application, which it is alleged in the answer were falsely and fraudulently made by Rodes Thomson, are as follows: 1. That he had not previously any serious illness, constitutional disease or injury. 2. That he did not drink wine, spirits or malt liquors daily or habitually. 3. That to the question, if he drank, to what extent, the answer was temperate. 4. The same answer was given to the question as to his former habits of drinking spirits or malt liquor. 5. That he had not been attended by a physician for any serious cause for ten years. 7. That he never had any of certain enumerated diseases, including diarrhœa; and 8, that he was temperate in his habits, and, to the best of his knowledge and belief, in sound physical condition and satisfactory subject for life insurance.

It is contended by counsel plaintiffs failed to deny an allegation in the answer that the statement of Rodes Thomson in regard to his former habits of drinking liquor was false and fraudulent, and that consequently the lower court erred in overruling defendant's motion for judgment notwithstanding the verdict. ·

It appears to us, after inspecting the transcript, that allegation was substantially denied; besides evidence on the issue was offered by both parties. But a question does arise whether the lower court correctly and full enough instructed the jury on that subject. The instruction bearing on that issue is as follows: "If the jury believe from the evidence that Rodes Thomson had a habit of intemperately using intoxicating liquors prior to his application for the insurance in question, and that such habit existed at such a time and to such an extent that it might reasonably have injured or impaired his health at the time of the application, then they should find for the defendant."

It is provided by section 22, chapter 22, General Statutes, that all statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties, and that no representations, unless material or fraudulent, shall prevent a recovery on the policy. Therefore, unless the fact of a former habit of using intoxicating liquors be considered a material inquiry at the time of an application for life insurance, whether his health may or may not thereby have been impaired or injured, the instruction quoted presented the issue on that subject fully and correctly.

It is of vital importance for an insurance company to know before issuing a life policy, whether the applicant is thus temperate in his habits, for obviously he would not be a fit subject for insurance, nor could a company prudently issue to him a life policy if he was not then temperate in his habits of drinking intoxicating liquor; and, consequently, if he had made a false statement in that particular, it would be no answer to say the habits were not such as to impair his health, because insurers have a right to protect themselves by guarding against the risk of pernicious habits. (May on Insurance, section 290.)

But it seems to us an inquiry in regard to previous habits of drinking intoxicating liquors is not material unless they existed to such an extent as to affect the health or physical condition of the applicant, and thereby render him an unsatisfactory subject for life insurance.

The issues involved as to verity of each one of the other statements made by Rodes Thomson in his application for the policy were, we think, fully and correctly presented by instructions to the jury. But it is earnestly contended the verdict is, in language of counsel, such a monstrous perversion of justice that we should set it aside. The rule by which this court has been uniformly governed in revising the verdict of a jury is, that it must be flagrantly against the evidence to justify setting it aside. We do not, therefore, say whether the verdict in this case is such as this court would have rendered upon the bill of evidence as presented. It is sufficient that, in our opinion, there is evidence conducing to support it,

and it may be if we had heard the evidence face to face with the witnesses our finding would not have been different from that of the jury. The most important witness for the defendant on the trial was the grandfather of the infant plaintiffs, two of his sons also testifying to the same purpose; and not only did he exhibit an apparent desire for defendant to succeed, but it appears probable the insurance company would not have resisted payment of the policy but for his voluntary and active interference. It is not, therefore, surprising that the jury failed to give full credit to witnesses occupying such a hostile and unnatural attitude as did the grandfather and his two sons, who came from adjoining counties to testify against their nephew.

There being evidence showing, or tending to show, that Rodes Thomson was, at the time he made the application, a man of temperate habits, in sound physical condition, and a satisfactory subject for life insurance, we do not feel authorized to disturb the verdict upon what, at best, is a mere preponderance of the evidence in favor of the defendant.

Another ground for reversal is refusal of the court to permit a witness for defendant to testify, who appeared in court for that purpose, after plaintiff had closed their evidence, that of defendant having been previously given, upon the issue in regard to statements of Rodes Thomson in his application for the policy. Although that witness was present and sworn at beginning of the trial, we think the ruling of the court was not an abuse of discretion; for defendant did not exercise proper diligence to procure the co-

erced attendance of the witness after discovering his absence. His testimony, as shown by defendant's affidavit, would have been simply cumulative, and, as stated by the judge, economy of time was necessary in order to complete trial of the case before expiration of that term of court.

It seems to us the issues of fact were properly presented to the jury, by instructions of the court, and as there was no error of law to the prejudice of defendant's right, the judgment must be affirmed.